# EXHIBIT 1

ELECTRONICALLY FILED
COURT OF COMMON PLEAS :21-cv-00063-MJN Doc #: 1-2 Filed: 02/24/21 Page: 2 of 41 PAGEID #: 13
THURSDAY JANUARY 21 2021 09:20:27 AM
CASE NUMBER: 2021 CV 00237
MIKE FOLEY
CLERK OF COURTS MONTGOMERY COUNTY OHIO

# IN THE COURT OF COMMON PLEAS, MONTGOMERY COUNTY OHIO
## CIVIL DIVISION

# SUMMONS

**PLAINTIFF**
BARRY COSTA
**VS**
**DEFENDANT**
DAYTON-PHOENIX GROUP et al

**CASE NUMBER**
2021 CV 00237

**ARTICLE NUMBER**
782856972821

**TO THE FOLLOWING NAMED DEFENDANT:**
DAYTON-PHOENIX GROUP
1619 KUNTZ ROAD
DAYTON OH 45404

You have been named a Defendant or Respondent in a complaint filed in Montgomery County Court of Common Pleas, Dayton, Ohio. **A copy of the Complaint is attached.**

**BY:**
BARRY COSTA
3908 STATE ROUTE 49
ARCANUM, OH 45304

**PLAINTIFF ATTORNEY:**
MICHAEL W DEWITT
4200 REGENT STREET
COLUMBUS, OH 43219

You are hereby summoned and required to serve upon the Plaintiff's attorney, or upon the Plaintiff, if the Plaintiff does not have an attorney, a copy of an **Answer to the Complaint** within **28 days after receipt of this summons, exclusive of the day you received the summons.** Your original **Answer** must be filed with the Clerk of Court's Office **within 3 days** after you serve the Plaintiff's attorney or Plaintiff.

**If you fail to appear and defend, Judgment by Default may be rendered against you granting Plaintiff(s) the relief demanded in the Complaint.**

**NOTE:**

If you are represented by an attorney, your attorney is required to electronically file your Answer through the Court's authorized electronic filing system. See Montgomery County Common Pleas Court Loc. R. 1.15, Electronic Filing of Court Documents, for requirements of electronic filing. Local rules can be accessed at www.montcourt.oh.gov. Service of the Answer will be made upon the Plaintiff's attorney through the Court's authorized electronic filing system. If the Plaintiff does not have an attorney, your attorney is required to serve a paper copy of your Answer to the Plaintiff.

If you are representing yourself (appearing pro se), you have the option to file your Answer in paper OR through the Court's authorized electronic filing system (See Loc. R. 1.15, Electronic Filing of Court Documents). Local rules can be accessed at www.montcourt.oh.gov. If you file your Answer in paper, you are required to serve a paper copy of your Answer to the Plaintiff's Attorney or the Plaintiff. If you file your Answer electronically, service of the Answer will be made upon the Plaintiff's attorney through the Court's authorized electronic filing system. If the Plaintiff does not have an attorney, you are required to serve a paper copy of your Answer to the Plaintiff.



/s/ **MIKE FOLEY, ISSUED Thursday, January 21, 2021**
**MIKE FOLEY, CLERK**
**COURT OF COMMON PLEAS**
**MONTGOMERY COUNTY, OHIO**

**PREPARED ELECTRONICALLY**

**In The Court Of Common Pleas, Montgomery County Ohio**
**Civil Division**

**RETURN OF SERVICE SUMMONS**

**PLAINTIFF**

BARRY COSTA

**VS**

**DEFENDANT**

DAYTON-PHOENIX GROUP et al

**CASE NUMBER**

2021 CV 00237

**ARTICLE NUMBER**

782856972821

**TO THE FOLLOWING NAMED PARTY:**
DAYTON-PHOENIX GROUP
1619 KUNTZ ROAD
DAYTON, OH 45404

**RETURN OF SERVICE(PERSONAL)**

**FEES**

| | |
|---|---|
| SERVICE | $_____ |
| MILEAGE | _____ |
| TOTAL | $_____ |
| DATE | _____ |

I received the document on _____, 2021, at ____ o'clock ____ M. and made personal service of it upon _____ by locating him/them and tendering a copy of the document and accompanying documents, on _____, 2021.

By _____

**RETURN OF SERVICE(RESIDENCE)**

**FEES**

| | |
|---|---|
| SERVICE | $_____ |
| MILEAGE | _____ |
| TOTAL | $_____ |
| DATE | _____ |

I received the document on _____, 2021, at ____ o'clock ____ M. and made residence service of it upon _____ by leaving, at his/their usual place of residence with _____ a person of suitable age and discretion then residing therein a copy of the complaint and accompanying documents, on _____, 2021.

By _____

**RETURN OF SERVICE(FAILURE OF SERVICE)**

**FEES**

| | |
|---|---|
| SERVICE | $_____ |
| MILEAGE | _____ |
| TOTAL | $_____ |
| DATE | _____ |

I received the document on _____, 2021, at ____ o'clock ____ M. with instructions to make personal/residence service upon _____ and I was unable to serve a copy documents upon him/them for the following reasons:

_____

By _____

PAGE INTENTIONALLY LEFT BLANK

COURT OF COMMON PLEAS
Wednesday, January 20, 2021 9:19:26 PM
CASE NUMBER: 2021 CV 00237 Docket ID: 35178378
MIKE FOLEY
CLERK OF COURTS MONTGOMERY COUNTY OHIO

## IN THE COURT OF COMMON PLEAS
## MONTGOMERY COUNTY, OHIO

| | |
|---|---|
| **BARRY COSTA** | : |
| **3908 State Route 49** | : **Case No.** |
| **Arcanum, Ohio 45304** | : |
| | : **Judge** |
| **Plaintiff,** | : |
| | : |
| **v.** | : |
| | : **JURY DEMAND ENDORSED** |
| **DAYTON-PHOENIX GROUP** | : **HEREON** |
| **1619 Kuntz Road** | : |
| **Dayton, OH 45404** | : |
| | : |
| **and** | : |
| | : |
| **IUE-CWA, AFL-CIO** | : |
| **LOCAL 755** | : |
| **2701 Dryden Road** | : |
| **Moraine, Ohio 45539** | : |
| | : |
| **and** | : |
| | : |
| **ANTIJUAN DAVIS** | : |
| **c/o Dayton-Phoenix Group** | : |
| **1619 Kuntz Road** | : |
| **Dayton, OH 45404** | : |
| | : |
| **Defendants.** | : |

## COMPLAINT

Plaintiff Barry Costa, by and through his undersigned counsel, herein states the following

Complaint against Defendants Dayton-Phoenix Group ("DPG"), IUE-CWA Local 755 ("Local

755") and Antijuan Davis.

## PARTIES

1.     Costa is a resident of Arcanum, Ohio.

1

2.     DPG is an Ohio corporation that conducts business in, among other locations, Montgomery County, Ohio.

3.     Local 755 is the local union representing Mr. Costa and the DPG Kuntz Road Plant.

4.     Davis is an employee of DPG and the DPG Kuntz Road Plant's union steward.

5.     At all relevant times, DPG employed four or more employees within the state of Ohio.

## JURISDICTION AND VENUE

6.     This Court has jurisdiction in this matter because the amount in controversy is greater than $15,000.

7.     Venue is proper in this Court because all the acts and occurrences alleged herein took place in and around Montgomery County.

## FACTS COMMON TO ALL CLAIMS

### Events from February 2019 through November 2019

8.     Costa has been employed at DPG since February 18, 2019 and has worked as a material handler since late March or early April 2019.

9.     From the beginning of his employment until mid-October 2019, he worked 40 hours per week, Monday through Friday.

10.    From mid-October 2019 to December 2019, he worked 58 hours—10 hours per day Monday through Friday and eight hours per day on Saturday.

11.    At that time, he was paid $14.10 per hour and time and a half for any time worked over 40 hours.

2

12.     Employees at DPG are represented by the International Union of Electronic, Electrical, Salaried, Machine and Furniture Workers AFL-CIO (IUE), Communications Workers of America, AFL-CIO, (CWA), Local 755 (the "Union").

13.     By October 31, 2019, Costa had been working mandatory overtime of 58 hours per week for approximately five weeks and his health was suffering so he scheduled an appointment with his primary care physician, who gave him a 45-hour per week work restriction for a period of six months.

14.     Mr. Costa was facing resistance from DPG about the work restrictions, so he contacted union president Mike Gross for help, texting him on Thursday October 31, 2019.

15.     After Gross's intervention, DPG granted the restriction, but for only three months.

16.     In or about mid-November, the Union held a scarcely- or late-publicized meeting to vote on a contract extension.

17.     Several employees inquired about the content of the meeting and Davis told them they would have to attend to find out.

18.     Costa did not attend the meeting but was told by coworkers that less than 40 employees attended.

19.     Costa objected about that meeting to Davis, primarily because members were not properly informed of the substance of what was to be discussed at the meeting and that they were not given enough time to educate themselves about that content prior to the meeting.

20.     Davis reacted by yelling at Mr. Costa and telling him he did not know what he was talking about.

21.     That same evening, Mr. Costa called the International Union in Washington DC to also report these issues.

3

22.     While Costa did not give his name in the message he left at the International Union, several days later Davis confronted Costa about the phone call, and during that confrontation told Costa then he had burned his bridge with the union and that if he ever needed further representation, he was out of luck.

**Events beginning in January 2020 and continuing through October 2020**

23.     In early 2020, Costa discovered through happenstance that DPG had only approved him for a three-month work restriction, even though his doctor had stated that the restrictions should last six months.

24.     On January 22, 2020, Costa texted Trish Miller in DPG's human resources department about this discrepancy, along with contacting the union.

25.     In response to Mr. Costa's email, Miller told Mr. Costa that the restrictions had only been approved through January 2, 2020, stating "We only have to accommodate on a temporary basis. If the condition continues and you are not able to do what is required, we will have to look a [sic] other options. The approval I gave backdated to your appointment on 1/2. It was 3 months from that date. Please let me know if you have additional questions."

26.     This was despite the fact that Mr. Costa's caregiver had stated in her letter that his symptoms were chronic. (Exhibit 1).

27.     On January 23, 2020 Mr. Costa texted Gross, the local union president, about this issue, and requesting the union's assistance, but Gross never responded.

28.     Costa also spoke with Davis about the situation and Davis he asked him why he needed the restrictions, and told him, among other things, that a material handler was "tit job" and that he was being a "pussy."

4

29.     At about the same time, Costa learned that a coworker had been accommodated regarding similar restrictions without having the issues that Costa was experiencing, and he texted Davis and asked for assistance.

30.     In the same time frame, Mr. Costa also spoke to plant manager Mark Yoder about moving to a different job at a different plant as an accommodation, but Yoder told him it was not "musical jobs."

31.     Throughout the texts, Davis refused to respond to Mr. Costa's questions and kept trying to change the narrative and make Mr. Costa's not working Saturdays the issue.

32.     He also spoke to Davis about his recently learning about a material handler with less seniority being hired for a 40-hour per week position at another local DPG plant, that he felt he should have been permitted to apply for.

33.     On January 27, 2020, Mr. Costa texted Davis about the above situations and, in that same series of text messages, asked several times that Davis keep his personal medical information confidential. (Exhibit 2).

34.     On January 28, 2020, at approximately 6:30 a.m., Costa was sitting in his forklift when Davis walked past him, and then returned to confront him.

35.     It was clear during this confrontation that Davis was trying to bait Mr. Costa into a physical altercation and interestingly, Davis's friend and co-worker Jerrod Lee was there that morning, even though his workstation was not in that area and he rarely began work before 9:00 a.m.

36.     In that confrontation, Davis accused Mr. Costa of faking his medical condition and, during his angry rant, swore and demeaned Mr. Costa and yelled out Mr. Costa's confidential medical information, despite Mr. Costa's specific request only the day before, that Davis keep that information confidential.

5

37.     When Mr. Costa told Davis to calm down, Davis swung at him and hit the crossbar of Mr. Costa's forklift and broke the bracket off the pole of the forklift, sending it flying across the warehouse floor.

38.     That confrontation, which was witnessed by numerous DPG employees, which took place during regular business hours on DPG property.

39.     Such an assault was not only unlawful, but it was also a violation of written DPG policies and should have resulted in Davis's immediate dismissal.

40.     Mr. Costa immediately reported this assault to DPG management, and Tiffany Baker, from the DPG human resources department, began conducting what she claimed to be an investigation on the day of the incident, taking both witness statements and photos of the scene.

41.     During that "investigation," on or about February 13, 2020, Miller made unprivileged defamatory statements to DPG employees Gill Woods, Pam Jetters, Sally Newlon and Laura Horn that Mr. Costa was a liar and was lying about the events surrounding the confrontation initiated by Davis.

42.     In addition, Davis, on or about February 10-12, 2020, made unprivileged defamatory statements to Andrew Estep and Austen Williams that Mr. Costa was a liar and was lying about the events surrounding the confrontation initiated by Davis and was also a "troublemaker."

43.     However, despite the assault being a violation of DPG's own policies, upon information and belief, Davis never faced discipline of any kind regarding this incident, despite DPG's claim that it conducted an "investigation."

44.     In fact, Mr. Costa was told February 18, 2020, that the company had determined that Davis had not assaulted him but had simply demonstrably waved his arms while "talking" to Mr. Costa, apparently ignoring the damage to the forklift.

45.     Soon thereafter, in retaliation for the above-described protected activity, DPG's resistance to Mr. Costa's recertification became more aggressive.

6

46.    On February 13, 2020, Mr. Costa visited his primary care physician who, based upon the examination conducted that day, stated that he was unable to work more than 40 hours per week for the next six months and that the ongoing situation at DPG was exacerbating his symptoms.

47.    That information was memorialized in a letter to Mr. Costa, which he delivered to the DPG HR department. (Exhibit 3).

48.    In a letter dated February 18, 2020, DPG requested more information regarding the work restrictions, with a February 25th deadline to respond, and questioned the credentials of Mr. Costa's caregiver. (Exhibit 4).

49.    Mr. Costa's doctor told him that in her many years of practice, she had never dealt with an employer that was as obstinate and uncooperative as DPG.

50.    In an email dated February 19, 2020, Baker accused Mr. Costa of refusing to meet in the HR office about the restrictions and reminded him of the requests set out in the February 18th letter. (Exhibit 5).

51.    On February 25th, Mr. Costa emailed Baker to let her know that he had requested his doctor to forward the requested information. (Exhibit 5).

52.    In a letter dated February 23, 2020, his caregiver responded to DPG's requests. (Exhibit 6).

53.    In addition, in a letter dated February 24th, his chiropractor provided more medical information. (Exhibit 7).

54.    In the same timeframe, Mr. Costa also applied for intermittent leave under the Family and Medical Leave Act ("FMLA"), through Sedgwick, DPG's third-party administrator.

55.    As evidence of his qualification for FMLA intermittent leave, he submitted the same medical paperwork he had submitted to DPG for the ADA accommodations.

7

56.     On March 5th, he was approved for intermittent FMLA leave from February 18, 2020 through August 18, 2020.

57.     On March 9th, having still heard nothing regarding his requested ADA accommodation of a 40-hour work week, he emailed Baker, pointing out that his FMLA had been approved using the same evidence that had been submitted in support of his ADA accommodations and stated that he felt he was the only employee being treated like he was.

58.     In response, Baker said only that he was making an assumption about his treatment being unique.

59.     On March 13th, Mr. Costa sent an email to Miller asking about the unreasonable delay in addressing the restrictions requested in his doctor's February 13th letter.

60.     On March 17, 2020, Mr. Costa was told that he would be required to obtain a "second opinion" regarding his requested ADA accommodations and that was followed by a letter dated March 19, 2020, wherein Trish Miller again questioned Mr. Costa's physician's credentials and required him to submit to an independent medical examination ("IME"). (Exhibit 8).

61.     That letter was followed *on the very next day*, by a letter containing the same information. (Exhibit 9).

62.     In total, Mr. Costa received *9* certified letters regarding a potential IME.

63.     There is no question that the Regulations regarding employee medical examinations set forth at 29 C.F.R. § 1630.14(c) allowed DPG to "require a medical examination (and/or inquiry) of an employee that is job-related and consistent with business necessity."

64.     However, despite his having provided the documentation he was asked to provide, and the fact that nothing has changed, DPG continued to request additional

8

examinations, which were not "consistent with a business necessity" and badgered him to provide additional information and submit to further examinations.

65.    Those "requirements" were harassment and were not permitted under the Regulations.

66.    Furthermore, requiring him to submit to an IME simply to recertify the accommodations that been previously approved, and that was based on the same evidence used in applying for FMLA benefits, was in retaliation for his seeking the ADA accommodations in the first place.

67.    Those ADA accommodations were never approved.

68.    Since DPG refused to grant the reasonable ADA accommodations requested, from February 18th through August 1st, Mr. Costa was forced to use his intermittent FMLA benefits to make up for the four hours of overtime he was being required to work, despite his doctor's restrictions.

69.    In addition, Mr. Costa's FMLA time was miscalculated, and when he complained about it, he faced further retaliation, in addition to having to hire an attorney to address the issue with DPG's counsel.

70.    In the same time frame, Mr. Costa was exposed to the COVID-19 virus on or about April 3, 2020 and sought a medical diagnosis regarding symptoms he was experiencing.

71.    He was advised by a health care provider to self-quarantine until April 17, 2020 because of that exposure.

72.    As such, he was entitled to the protections and rights afforded by the Families First Coronavirus Response Act, 85 Fed. Reg. 19,326 (Apr. 6, 2020) (to be codified at 29 C.F.R. § 826) ("FFCRA").

9

73.     That Act required that certain employers, which included DPG, provide two weeks (up to 80 hours) of paid sick leave at the employee's regular rate of pay, which the employee is required to self-quarantine on the advice of a health care provider, and/or because they are experiencing COVID-19 symptoms and are seeking a medical diagnosis.

74.     DPG did not dispute that either the FFCRA applied to DPG or that Mr. Costa was entitled to the required paid sick leave.

75.     That notwithstanding however, the company attempted to either charge Mr. Costa's FFCRA paid sick leave against time he had available under an existing claim pursuant to the Family Medical Leave Act ("FMLA") or require him to open a new FMLA claim to cover the leave.

76.     While the Act does provide for certain "Expanded" FMLA benefits under section 826.23, that provision did not apply to Mr. Costa's situation.

77.     While DPG eventually backed down and did not require Mr. Costa to charge this against his FMLA claim, it was only after getting caught trying that the company reversed course.

**Events beginning in January 2020 and continuing through October 2020**

78.     In the fall of 2020, Mr. Costa believed he had been written up by DPG based on untrue allegations and he sought to file a grievance regarding that write up.

79.     On or about November 10th through 13th, Davis approached several DPG employees and attempted to coerce them into signing written statements against Mr. Costa's interests.

80.     In addition, he made unprivileged defamatory statements about Mr. Costa to Kristy Gray, that Mr. Costa was a liar, a troublemaker and was trying to take down the company.

81.     All the above conduct caused damages to Mr. Costa in an amount greater than $25,000.

## COUNT I
## ASSAULT — ALL DEFENDANTS

82.     Plaintiff realleges and restates the facts and allegations above, as if fully rewritten herein.

83.     The tort of assault occurs when an individual intentionally offers or attempts, without authority or consent, to harm or offensively touch another that reasonably places the other in fear of such contact.

84.     On January 28, 2020, Davis swung his fist at Mr. Costa and hit the crossbar of Mr. Costa's forklift and broke the bracket off the pole of the forklift, sending it flying across the warehouse floor, that is, he intentionally offered or attempted, without authority or consent, to harm or offensively touch Mr. Costa.

85.     As such, Davis committed assault.

86.     At the time Davis committed the assault, he was an employee of DPG and a principal/agent relationship existed between Davis and DPG.

87.     At the time Davis committed the assault, he was acting within the scope of his employment with DPG.

88.     At the time Davis committed the assault, he was an agent of Local 755 and a principal/agent relationship existed between Davis and Local 755.

89.     At the time Davis committed the assault, he was acting within the scope of his agency with Local 755.

90.     Because Davis was a DPG employee and was acting within the scope of his employment at the time of the assault, DPG is vicariously liable for the assault.

91.     Because Davis was a Local 755 agent and was acting within the scope of his agency at the time of the assault, DPG is vicariously liable for the assault.

11

92.     As result of Davis's assault, Mr. Costa suffered damages in an amount greater than $25,000, to be determined at trial.

**COUNT II**
**INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS – ALL DEFENDANTS**

93.     Plaintiff restates and reasserts all the allegations set forth above, as if fully rewritten herein.

94.     Due to the conduct addressed above by Defendants, Mr. Costa suffered, and continues to suffer, severe emotional distress.

95.     Defendants either intended to cause emotional distress to Mr. Costa or knew or should have known that their actions and omissions would result in serious emotional distress to Mr. Costa.

96.     Defendants' actions were extreme and outrageous.

97.     Defendants' actions and omissions directly and proximately caused extreme emotional distress and mental/psychological/emotional harm to Mr. Costa.

98.     As a direct and proximate cause of Defendants' actions, Mr. Costa has been damaged in an amount exceeding $25,000 to be determined at trial.

**COUNT III**
**DISCRIMINATION AND RETALIATION UNDER**
**OHIO REVISED CODE CHAPTER 4112 — DPG**

99.     Plaintiff realleges and restates the facts and allegations above, as if fully rewritten herein.

100.    Mr. Costa was an "employee" as that term is defined in R.C. 4112.

101.    DPG was an "employer" as that term is defined in R.C. 4112.

102.    Mr. Costa is disabled as defined by the ADA and DPG was aware of this fact.

12

103.    Because DPG knew Mr. Costa was disabled and subjected him to the discriminatory treatment described above, he was a member of a protected class under R.C. 4112.

104.    Mr. Costa was subjected to the conduct alleged above because he was disabled.

105.    Mr. Costa was retaliated against, as described above, because of his complaints about Davis's assault and the fact that DPG was not properly handling his ADA claims.

106.    That retaliation included, among other things, not granting his ADA accommodations in a timely manner, which is considered an "adverse employment action" under R.C. 4112.

107.    For its violations of R.C. 4112, DPG is liable to Mr. Costa for damages in an amount to be determined at trial.

108.    As a direct and proximate cause of Defendants' actions, Mr. Costa has been damaged in an amount more than $25,000, which will be proven at trial.

## COUNT IV
## DISCRIMINATION AND RETALIATION UNDER THE AMERICANS WITH DISABILITIES ACT — DPG

109.    Plaintiff realleges and restates the facts and allegations above, as if fully rewritten herein.

110.    As addressed above, Mr. Costa requested the reasonable accommodation of working a 40-hour week, based on his disability.

111.    DPG's failure to provide these reasonable accommodations, with virtually no explanation why such an accommodation was unreasonable, is a violation of the ADA.

112.    In addition, complaints regarding the failure to provide a reasonable accommodation are considered a "protected activity."

13

113.    Mr. Costa's complaints to HR about DPG's failure to provide reasonable accommodations is a protected activity under the Act and any adverse employment action taken because of such protected speech constitutes prohibited retaliation.

114.    DPG's harassment of Mr. Costa after his complaints about its failure to provide a reasonable accommodation constitutes an adverse employment action.

115.    For its discrimination and retaliation under the ADA, DPG is liable to Mr. Costa in an amount to be determined at trial, plus the equitable remedies of reinstatement and/or front pay.

116.    As a direct and proximate cause of Defendants' actions, Mr. Costa has been damaged in an amount more than $25,000, which will be proven at trial.

## COUNT V
## DISCRIMINATION AND RETALIATION UNDER THE FAMILY AND MEDICAL LEAVE ACT — DPG

117.    Plaintiff realleges and restates the facts and allegations above, as if fully rewritten herein.

118.    As addressed above, Mr. Costa requested the reasonable accommodation of working a 40-hour week, based on his disability.

119.    DPG's failure to provide these reasonable accommodations, with virtually no explanation why such an accommodation was unreasonable, is a violation of the ADA.

120.    In addition, complaints regarding the failure to provide a reasonable accommodation are considered a "protected activity."

121.    Mr. Costa's complaints to HR about DPG's failure to provide reasonable accommodations is a protected activity under the Act and any adverse employment action taken because of such protected speech constitutes prohibited retaliation.

14

122.    DPG's harassment of Mr. Costa after his complaints about its failure to provide a reasonable accommodation constitute an adverse employment action.

123.    For its discrimination and retaliation under the ADA, DPG is liable to Mr. Costa in an amount to be determined at trial, plus the equitable remedies of reinstatement and/or front pay.

124.    As a direct and proximate cause of Defendants' actions, Mr. Costa has been damaged in an amount more than $25,000, which will be proven at trial.

**COUNT VI**
**DEFAMATION PER SE — ALL DEFENDANTS**

125.    Plaintiff restates and reasserts all the allegations set forth above, as if fully rewritten herein.

126.    DPG, Local 755 and/or their employees or agents, specifically Davis and Miller, acted with reckless disregard of the truth or falsity of the statements, when on or about February 13, 2020, Miller made unprivileged defamatory statements to DPG employees Gill Woods, Pam Jetters, Sally Newlon and Laura Horn that Mr. Costa was a liar and was lying about the events surrounding the confrontation initiated by Davis and on or about February 10-12, 2020, Davis made unprivileged defamatory statements to Andrew Estep and Austen Williams that Mr. Costa was a liar and was lying about the events surrounding the confrontation initiated by Davis and was also a "troublemaker."

127.    On or about November 10 through 13, 2020 Davis made unprivileged defamatory statements about Mr. Costa to Kristy Gray, that Mr. Costa was a liar, a troublemaker and was trying to take down the company.

128.    Those statements were malicious, materially and substantially false, and in reckless disregard for the truth.

129.    Those statements were made, directed, produced and published by DPG and/or its agents, employees and servants.

130.    DPG, Local 755 and their agents or employees, acted with "actual malice" as that term is defined under defamation case law, and such misconduct is not protected by any qualified privilege or other immunity from liability.

131.    Mr. Costa was neither a public figure nor had he taken any actions to place himself in the position of being a "public figure" during the time period of the allegations made in the Complaint.

132.    Mr. Costa suffered, and reasonably expects to suffer in the future, extreme emotional distress, humiliation, anxiety and mental anguish due to the defamation per se inflicted upon him.

133.    Due to the reckless disregard for the truth or falsity of the statements made by Miller and Davis, the false and defamatory statements have proximately resulted in a single and indivisible injury to Costa's reputation.

134.    DPG, Local 755, and their employees and/or agents Davis and Miller recklessly disregarded the truth or falsity of the representations made during the defamatory publication.

135.    The unlawful and defamatory misconduct of DPG, Local 755, and their employees and/or agents Davis and Miller demonstrates willful misconduct and the entire want of care and raises a presumption of conscious indifference to the foreseeable consequences.

136.    As a direct and proximate result of the false and defamatory statements made by DPG, Local 755, and their employees and/or agents Davis and Miller, Mr. Costa's reputation has been permanently damaged.

137.    Mr. Costa alleges that the Defendants' repeated and permanent publication of the defamatory material as described herein has caused substantial and material damages to Mr. Costa, his career, his personal life and well-being.

16

138.     Mr. Costa has suffered damages, including special damages, loss of reputation, humiliation, anxiety and severe emotional distress. The actions and misrepresentations made by Defendants constitute defamation per se in which damages are presumed under Ohio law. Mr. Costa has in fact suffered special damages, including but not limited to, damages to his reputation, anxiety, shame, exposure to public ridicule and contempt.

139.     As a proximate result of the false and defamatory statements by DPG, Local 755, and their employees and/or agents Davis and Miller, Mr. Costa has suffered physical consequences from stress, emotional distress, mental pain and suffering, anxiety, and reasonably expects to suffer such consequences in the future.

140.     As a direct and proximate result of the false and defamatory statements by DPG, Local 755, and their employees and/or agents Davis and Miller, Mr. Costa has suffered public hatred, contempt, scorn and ridicule.

141.     Due to the willful and wanton and reckless misconduct of the Defendants in the preparation and transmission of false statements of fact, Mr. Costa is entitled to an award punitive damages sufficient to punish, penalize and deter such misconduct in the future.

142.     As a direct and proximate result of the reckless misconduct of the Defendants, Mr. Costa is entitled to an award of attorneys' fees.

## COUNT VII
## DEFAMATION PER QUOD

143.     Plaintiff restates and reasserts all the allegations set forth above, as if fully rewritten herein.

144.     DPG, Local 755 and/or their employees or agents, specifically Davis and Miller, acted with reckless disregard of the truth or falsity of the statements, when on or about February 13, 2020, Miller made unprivileged defamatory statements to DPG employees Gill Woods, Pam Jetters,

Sally Newlon and Laura Horn that Mr. Costa was a liar and was lying about the events surrounding the confrontation initiated by Davis and on or about February 10-12, 2020, Davis made unprivileged defamatory statements to Andrew Estep and Austen Williams that Mr. Costa was a liar and was lying about the events surrounding the confrontation initiated by Davis and was also a "troublemaker."

145.    On or about November 10 through 13, 2020 Davis made unprivileged defamatory statements about Mr. Costa to Kristy Gray, that Mr. Costa was a liar, a troublemaker and was trying to take down the company.

146.    As a direct and proximate result of the defamatory transmissions, Mr. Costa has suffered and incurred special damages, including but not limited to, anxiety, mental anguish and stress, damage to his good name and reputation due to the reprehensible, false and malicious statements of fact made in transmitted by DPG.

## COUNT VIII
## INVASION OF PRIVACY

147.    Plaintiff restates and reasserts all the allegations set forth above, as if fully rewritten herein.

148.    Defendants have invaded and publicized Mr. Costa's personal affairs and placed him in a false light with the public as discussed above.

149.    Such conduct is a cause for outrage and would cause mental suffering, shame or humiliation to a person of ordinary sensibility.

150.    As a direct and proximate cause of Defendants' actions, Mr. Costa has been damaged in an amount more than $25,000, which will be proven at trial.

WHEREFORE, Mr. Costa demands the following:

Compensatory and punitive damages, and attorney fees and costs, in an amount in excess of $25,000.00 to be determined at trial, plus court costs, attorney fees, pre- and post-judgment interest and any and all other relief to which Mr. Costa is entitled to in law and in equity, including but not limited to compensatory, consequential and punitive damages.

Respectfully submitted.

DEWITT LAW, LLC

*/s/ Michael W. DeWitt*

Michael W. DeWitt (0066896)
4200 Regent Street
Suite 200
Columbus, Ohio 43219
(614) 398-2886
(614) 370-4552
(614) 750-1379 (facsimile)
mdewitt@dewittlawco.com
*Attorney for Plaintiff*

## JURY DEMAND

Plaintiff demands that a jury decide all claims in this matter triable to a jury.

*/s/ Michael W. DeWitt*

Michael W. DeWitt (0066896)

19



# KETTERING PHYSICIAN NETWORK PRIMARY CARE

-5 WASHINGTON LANE
SUITE 108
AVON OH 45206-76
phone: 937-436-8536
fax: 937-436-8335

January 13, 2020

Barry Costa
3908 St Rt 49
Arcanum OH 45304

To Whom It May Concern,

Barry was seen in our office on Jan 2, 2020. He is under my care for multiple complex ongoing chronic conditions including, but not limited to, anxiety, hypertension, cervical radiculopathy, achilles tendonitis, and obstructive sleep apnea. It is in my professional opinion that as he suffers from theses chronic conditions, he is unable to work the mandated 58 hours. I will be regularly monitoring him in the office for any changes. At this time, he is unable to work more than 45 hours per week for the next 6 months. See paperwork for further details.

If you have any further questions, please don't hesitate to contact my office.

Thank you

Sincerely ,

Kettering Physician Network, Primary Care

*Ashley Grubb, PA-C, MPAS*

EXHIBIT
1

| From Barry Costa (508) 837-8818<br>To Antoine Union (513) 702-6032 | *│ , ◆ | Jan 24, 2020<br>9:22 AM |
| From Barry Costa (508) 837-8818<br>To Antoine Union (513) 702-6032 | *│ [Attachment 1] Long message.txt | Jan 27, 2020<br>5.09 PM |
| From Antoine Union (513) 702-6032<br>To Barry Costa (508) 837-8818 | \|* 1/2 I know you see me calling your phone<br>sir I've told you over and over the fact<br>that you don't want to work on Saturdays<br>is not a grievance. You also nee | Jan 27, 2020<br>5:29 PM |
| From Antoine Union (513) 702-6032<br>To Barry Costa (508) 837-8818 | \|* 2/2 d to fact check before you<br>accuse ....Brian nor Rob is on ADA. Good<br>night | Jan 27, 2020<br>5.29 PM |
| From Barry Costa (508) 837-8818<br>To Antoine Union (513) 702-6032 | *│ Brian told me himself and is on FAMLA<br>and also on work restriction of 40 hours<br>from his doctor same as mine | Jan 27, 2020<br>5:31 PM |

EXHIBIT

2

| | | |
|---|---|---|
| From Barry Costa (508) 837-8818<br>To Antoine Union (513) 702-6032 | Regardless of the specifics then why am I not being told how I can work 40 hours with my restriction If there is a way to do it other than to circumvent the system and put me in the predicament that I am in how come nobody is explaining this | Jan 27, 2020<br>5:32 PM |
| From Barry Costa (508) 837-8818<br>To Antoine Union (513) 702-6032 | This is just BULLSHIT | Jan 27, 2020<br>5:32 PM |
| From Barry Costa (508) 837-8818<br>To Antoine Union (513) 702-6032 | And you know it | Jan 27, 2020<br>5:32 PM |
| From Antoine Union (513) 702-6032<br>To Barry Costa (508) 837-8818 | You are not on FMLA | Jan 27, 2020<br>5:33 PM |
| From Barry Costa (508) 837-8818<br>To Antoine Union (513) 702-6032 | Saturday's is not the issue of the grievance it's the Discrimination of refusal of my doctor's order and if you're refusing to let me file a grievance I guess I will be calling the Labor Relations Board and my attorney is the next up are you refusing | Jan 27, 2020<br>5:33 PM |
| From Barry Costa (508) 837-8818<br>To Antoine Union (513) 702-6032 | So let me get this straight if you will file a FMLA then what your doctor's order gets more credence | Jan 27, 2020<br>5:33 PM |
| From Barry Costa (508) 837-8818<br>To Antoine Union (513) 702-6032 | I will be filing FMLA in two more weeks if that's the way it works unfortunately it's this whole thing is ridiculous | Jan 27, 2020<br>5:34 PM |
| From Barry Costa (508) 837-8818<br>To Antoine Union (513) 702-6032 | So let me understand if I get approved by fmla then my doctors restriction is then valid to DPG! | Jan 27, 2020<br>5:36 PM |
| From Antoine Union (513) 702-6032<br>To Barry Costa (508) 837-8818 | I've done everything that I can to help you Barry. Your Dr restrictions are valid now. | Jan 27, 2020<br>5:39 PM |
| From Barry Costa (508) 837-8818<br>To Antoine Union (513) 702-6032 | What for the 6 months like written or the 2 months being backdated? | Jan 27, 2020<br>5:40 PM |
| From Barry Costa (508) 837-8818<br>To Antoine Union (513) 702-6032 | She backdated my original restriction so I lost a month.<br><br>When my doctor wrote my restriction for 6 months so what's valid mean? | Jan 27, 2020<br>5:44 PM |
| From Barry Costa (508) 837-8818<br>To Antoine Union (513) 702-6032 | When do they expire | Jan 27, 2020<br>5:45 PM |

| | | |
|---|---|---|
| From Barry Costa (508) 837-8818<br>To Antoine Union (513) 702-6032 | So im asking again how does Brian get a<br>restriction in production. What's the<br>formula to have his doctors note be<br>accepted by management. | Jan 27, 2020<br>5.47 PM |
| | Does it mean you have to be on FAMLA<br>first. | |
| | I need an answer to this question and its<br>a legitimate question. | |
| From Barry Costa (508) 837-8818<br>To Antoine Union (513) 702-6032 | Because it's not fair at all and yes its<br>discriminatory especially when you<br>cannot get an honest awnser how<br>someone else can get an approval but I<br>can't | Jan 27, 2020<br>5:48 PM |
| From Barry Costa (508) 837-8818<br>To Antoine Union (513) 702-6032 | An explanation would be nice | Jan 27, 2020<br>5:48 PM |
| From Barry Costa (508) 837-8818<br>To Antoine Union (513) 702-6032 | Hello are you going to awnser me????? | Jan 27, 2020<br>5.51 PM |
| From Barry Costa (508) 837-8818<br>To Antoine Union (513) 702-6032 | If not i want to file a grievance tomorrow<br>morning. For discrimination and non<br>representation from my union | Jan 27, 2020<br>5.52 PM |
| From Barry Costa (508) 837-8818<br>To Antoine Union (513) 702-6032 | Can't even get a straight answer | Jan 27, 2020<br>5 52 PM |
| From Antoine Union (513) 702-6032<br>To Barry Costa (508) 837-8816 | I told you already you need to fact check.<br>Because you don't want to work on<br>Saturdays is not a grievance. | Jan 27, 2020<br>5:55 PM |
| From Antoine Union (513) 702-6032<br>To Barry Costa (508) 837-8818 | You clearly don't know the laws or the<br>contract. | Jan 27, 2020<br>5:56 PM |
| From Barry Costa (508) 837-8818<br>To Antoine Union (513) 702-6032 | Im not going to be demeand and talked<br>down to by union rep maybe you forgot<br>who your working for and representing. I<br>clearly know one thing you will not<br>awnser any of my questions above on<br>how other employees got there<br>restrictions and the proper process | Jan 27, 2020<br>6 31 PM |
| From Barry Costa (508) 837-8818<br>To Antoine Union (513) 702-6032 | But I see this futile trying to get any solid<br>information out of you so my restriction<br>could be approved like other employees | Jan 27, 2020<br>6:32 PM |

| | | |
|---|---|---|
| From Barry Costa (508) 837-8818<br>To Antoine Union (513) 702-6032 | Ill handle it from here because I seem to be getting knowhere here. Your missing the whole issue it isn't about Saturdays Its about how other workers got there restrictions approved in the same department and to top it off in a production position verses a material handler | Jan 27, 2020<br>6:34 PM |
| From Barry Costa (508) 837-8818<br>To Antoine Union (513) 702-6032 | BUT ILL GET THIS AWNSER | Jan 27, 2020<br>6:34 PM |
| From Barry Costa (508) 837-8818<br>To Antoine Union (513) 702-6032 | Play your game | Jan 27, 2020<br>6:34 PM |
| From Barry Costa (508) 837-8818<br>To Antoine Union (513) 702-6032 | YOU CANT EVEN AWNSER A QUESTION IS MY RESTRICTION FOR THE SECOND TIME<br><br>6 MONTHS AS DOCTOR WRITTEN<br><br>OR<br><br>2 MONTH TRISH BACKDATED VERSION.<br><br>WHAT DOES VALID EVEN MEAN????? | Jan 27, 2020<br>6:37 PM |
| From Barry Costa (508) 837-8818<br>To Antoine Union (513) 702-6032 | AWNSER THE QUESTION | Jan 27, 2020<br>6:38 PM |
| From Barry Costa (508) 837-8818<br>To Antoine Union (513) 702-6032 | IM DONE!!!!!! | Jan 27, 2020<br>6:38 PM |



## KETTERING PHYSICIAN NETWORK PRIMARY CARE

[address illegible]
[illegible]
DAYTON OH 45[...]
Phone: 937-[...]
Fax: 937-[...]

2/13/2020

Barry Costa
3908 St Rt 49
Arcanum OH 45304

Barry Costa
3908 St Rt 49
Arcanum OH 45304

To whom it may concern,
Barry is under my care for multiple complex ongoing chronic conditions including, but
not limited to, anxiety, hypertension, cervical radiculopathy, achilles tendonitis, and
obstructive sleep apnea. Barry was seen in the office on 2/13/2020 and his symptoms
are worsening, and causing concern and risk for worsening disease severity.
It is in my professional opinion that as he suffers from these chronic conditions, he is
unable to work the mandated 58 hours. I will be regularly monitoring him in the office for
any changes.
At this time, he is unable to work more than 40 hours per week for the next 6 months.
See paperwork for further details.

If you have any further questions, please don't hesitate to contact my office.

Thank you,

KETTERING PHYSICIAN NETWORK PRIMARY CARE

Ashley Grubb, PA-C, MPAS

EXHIBIT
3



**DAYTON
PHOENIX
GROUP**
engineered to move

1619 Kuntz Road
Dayton, OH 45404-1240

phone 937.496.3900
toll free 800.657.0707

www.dayton-phoenix.com

February 18, 2020

Barry Costa,

I have received your request for a 40-hour a week work restriction. We need to gather more information from your physician because of insufficient documentation. We will approve this 40-hour restriction requested pending the documentation we are requesting is received and sufficient, by February 25, 2020. If you would prefer, we can contact the doctor directly with your permission. We need the following clarifications:

1.) We need to better understand why the hours restriction is necessary when you can otherwise perform the job.
2.) We need clarification of the functional limitations that are due to the claimed disabilities.
3.) We need verification that your primary care physician is an expert in anxiety, hypertension, cervical radiculopathy, achilles tendonitis and obstructive sleep apnea.

Regards,

Trisha A. Miller
Team Member Care Ambassador
Dayton-Phoenix Group
250 Northwoods Blvd.
Vandalia, OH 45377
937-496-3972 office
**Redacted**) cell

EXHIBIT
4

ATTACHMENT 13

# Re: Response Needed by Tuesday, February 25, 2020

**From:** Tiffany Baker                                          2/19/20 2:13 PM

**To:** Barry Costa

The fax number is 937-496-3969.

Get Outlook for iOS

**From:** Barry Costa <barrycosta@msn.com>
**Sent:** Wednesday, February 19, 2020 10:57:51 AM
**To:** Tiffany Baker <tbaker@dayton-phoenix.com>
**Subject:** Re: Response Needed by Tuesday, February 25, 2020

Ok thanks you could you please send me DPG fax number as soon as possible I am leaving today to go to the doctors and have her fill out my paperwork that Trish requested

Thanks
*Sent from my Boost Mobile Phone.*

—— Original message——
**From:** Tiffany Baker
**Date:** Wed, Feb 19, 2020 10:29 AM
**To:** Barry Costa;
**Cc:** Trisha Miller;
**Subject:**Response Needed by Tuesday, February 25, 2020

Hi Barry,

Since you have refused to come to the HR office, we are sending this via email to make sure you have received a copy. We are also giving Jason Winner a sealed envelop to deliver to you today with the information in it. There is a response needed in regards to your restrictions by Tuesday, February 25, 2020.

Your text at 4:52pm on Monday, February 18, 2020 referred to you letting Christy know the real truth. I apologize that are responses are not getting to you as fast as you would like. HR is in no way trying to be disrespectful. I will make sure to forward all of your emails and text messages to Christy. Please understand she will be leaving for vacation and will return in early March.

Sincerely,



EXHIBIT
5

Tiffany Baker
Dayton Phoenix Group, Inc.

All information in this e-mail and its attached documents is considered CONFIDENTIAL and PROPRIETARY
to Dayton-Phoenix Group, Inc.

All information in this e-mail and its attached documents is considered CONFIDENTIAL and PROPRIETARY
to Dayton-Phoenix Group, Inc.



# KETTERING PHYSICIAN NETWORK PRIMARY CARE

450 B WASHINGTON JACKSON RD
SUITE 108
EATON OH 45320-7601
Phone: 937-456-8330
Fax: 937-456-8335

2/23/2020

Barry Costa
3908 St Rt 49
Arcanum OH 45304

To whom it may concern,
Barry is under my care for multiple complex ongoing chronic conditions including, but not limited to, anxiety, hypertension, cervical radiculopathy, Achilles tendonitis, and obstructive sleep apnea. Barry has been seen several times in the office for these chronic ongoing disease processes. I have reviewed patient's job title of material handler and he is able to complete several of the duties listed. He is able to operate a forklift, he is able to work under pressure and deadlines. He works well with others. He is able to pull parts from inventory, pack and label, interpret Syteline transactions and has basic math skills with high school diploma. He is able to lift up to 40 pounds and able to communicate with others and read. He is able to push and pull objects. He does possess a valid driver's license. He is able to perform repetitive motions with hands wrist and arms. He is able to stand bend twist as required. He is able to hear noises from other vehicles and is organized and detail oriented. He has done all of these successfully and per patient has never had any disciplinary action. Unfortunately due to his chronic medical conditions he is unable to work the 58 hours mandated while performing these duties. He is able to successfully complete these job descriptions/duties but within a 40-hour time week due to his chronic conditions. Working more than the 40-hour work week has made his anxiety and depression worse. He has chronic pain from cervical radiculopathy and Achilles tendonitis. Because of this he is only able to work 40 hours per week, because working longer than this would and has exacerbated these chronic conditions. It is in my professional opinion that as he suffers from these chronic conditions, he is unable to work the mandated 58 hours. I will continue to monitor him in the office for any changes.

As to your questioning and need for verification that I am an expert in anxiety hypertension cervical radiculopathy, Achilles tendonitis and obstructive sleep apnea, I see all of these conditions and multiple more on a daily basis. I am a certified physician assistant and Ohio state medical board certified in addition to nationally certified through the NCCPA. I have been in the medical field for 13 years and have much experience in evaluating, diagnosing and caring for these types of conditions. Patient has seen pulmonology specialists in the past, prior to seeing me, and has been evaluated for his

EXHIBIT

6

sleep apnea. He has been evaluated by his previous family care physician for his cervical radiculopathy and does have previous imaging to include MRI. He has been evaluated for high blood pressure and it is of note that since he has been going through worsening anxiety/stress symptoms his hypertension has become worse over the past year. I am aggressively managing this and he is following regularly in the office. His worsening hypertension does seem to be intricately related to his worsening anxiety which seems to stem from his current work conditions. Especially from stress and exhaustion from working mandated overtime of 58 hours.

I am part of a 5000+ patient practice and regularly see patients on a daily basis with anxiety depression hypertension sleep apnea and cervical radiculopathy. My partners and I also see several patients on a daily basis with different types of orthopedic conditions to include but not limited to such processes as Achilles tendonitis. I have also worked in the emergency department for several years, 2007-2017, and have also managed several of these medical conditions in an emergent nature. Patients with severe anxiety and depression are often not able to work long extensive hours at a time, even though they may be able to complete the specific duties listed, as in Barry's case. It is also of note that people with tendonitis, whether it be in the Achilles tendon or other joint, often will have chronic recurrent ongoing pain and this can cause flareups and exacerbations which are often worsened by standing lifting pushing pulling for extensive and excessively long periods of time. Hypertension can also be a chronic condition that can be exacerbated due to stress, anxiety and pain, all of which patient suffers from and can be exacerbated due to long extensive hours and working overtime (over 40 hours) on a regular weekly basis.

If you have any further questions, please don't hesitate to contact my office.

Thank you,

KETTERING PHYSICIAN NETWORK PRIMARY CARE

Ashley Grubb, PA-C, MPAS



Steven Fors, D.C.
sfors@westportchiro.com
Clinic Director

February 24, 2020

Re: Barry Costa
Date of Birth: 1/20/1963

To Whom It May Concern:

Between 2013 and 2017 I treated Barry Costa on multiple occasions for
recurrent neck pain, usually aggravated by some combination of physical
and psychoemotional stress and often radiating to the upper back or right
upper extremity. Most episodes were managed adequately with manual
therapy that included high velocity low amplitude manual manipulation of
dysfunctional thoracocervical joints and myofascial therapy directed to
surrounding muscles, but the problem would consistently recur.

Barry has a chronic joint dysfunction/myofascial pain syndrome affecting
his neck and upper back that will almost certainly continue to flare up in
response to excessive physical, ergonomic or psychoemotional stresses.

If you have any questions or need any further information, please contact
me.

Warm Regards,

Steven Fors, D.C.

6

**move**
*the way you were meant to*

Westport Chiropractic        www.westportchire.com
                             p: 508.679.5500 f: 508.679.8199

EXHIBIT
7



**DAYTON**
**PHOENIX**
**GROUP**
engineered to move

1619 Kuntz Road
Dayton, OH 45404-1240

phone 937.496.3900
toll free 800.657.0707

www.dayton-phoenix.com

March 19, 2020

Barry Costa
3908 OH-49
Arcanum, OH 45304

Dear Barry:

This letter is a follow-up to our instructions that you will need to obtain a second opinion relating to your request to restrict overtime as a disability-related accommodation. The Company has reviewed the letter from your physician, who is a primary care doctor, indicating that you can perform the functions of your job within a 40 hour week, but cannot work overtime due to a number of conditions, including anxiety, hypertension, cervical radiculopathy, achilles tendonitis, and obstructive sleep apnea. The documentation provided by your primary care physician is insufficient as (1) the physician does not appear to be specifically trained or specialized in these various areas and therefore does not have the expertise to give an opinion about them as it relates to overtime requirements, and (2) does not sufficiently identify the functional limitations related to the various conditions with regard to overtime requirements In order to further evaluate your request for an accommodation, you will be required to appear for independent medical examinations by doctors designated by the Company regarding whether you can perform the essential functions of your job with or without reasonable accommodation, and without representing a direct threat to the health or safety of yourself or others. The Company will cover the costs of this examination.

Accordingly, you will be required to appear for independent medical examination by Dr. James Hawkins on March 23, 2020 at 2:00 pm. The addresses are below. The Company will cover the costs of this examination.

> Dr. James R. Hawkins – Psychiatry & Neurology
> 2727 Madison Road Ste 303B
> Cincinnati, OH 45209
> Office is located on the 3rd floor above a store front building
> (513) 721-0990

Accordingly, you will be required to appear for independent medical examination by Dr. Paul T. Hogya, M.D., FACEP on March 26, 2020 at 10:00am. The addresses are below. The Company will cover the costs of this examination.

> Dr. Paul T. Hogya M.D., FACEP
> Workability Wellness Center
> 7665 Monarch Court #109
> West Chester, OH 45069
> (513) 494-0308

EXHIBIT

8

Directions: From Cincinnati area: North on I-75. Exit Tylersville Road. Turn Right on Tylersville. Turn Right at Thorton's Gas Station on Kings Gate Way. Turn Left onto Monarch Court. Brick office building on right.

If you do not appear for these appointments absent extenuating circumstances, the Company will determine that you have refused to participate in the interactive process and will evaluate your request accordingly.

Once we receive the report from the physician, we will further evaluate your request for accommodation, and will contact you to discuss further.

If you have any questions, please contact me at 937-496-3972.

Regards,

*Trisha A. Miller*

Trisha A. Miller
Team Member Care Ambassador
Dayton-Phoenix Group
250 Northwoods Blvd.
Vandalia, OH 45377
937-496-3972 office
 Redacted cell



**DAYTON
PHOENIX
GROUP**
engineered to move

1619 Kuntz Road
Dayton, OH 45404-1240

phone 937.496.3900
toll free 800.657.0707

www.dayton-phoenix.com

March 20, 2020

Barry Costa
3908 OH-49
Arcanum, OH 45304

Dear Barry:

This letter is a follow-up to our instructions that you will need to obtain a second opinion relating to your request to restrict overtime as a disability-related accommodation. The Company has reviewed the letter from your physician, who is a primary care doctor, indicating that you can perform the functions of your job within a 40 hour week, but cannot work overtime due to a number of conditions, including anxiety, hypertension, cervical radiculopathy, achilles tendonitis, and obstructive sleep apnea. The documentation provided by your primary care physician is insufficient as (1) the physician does not appear to be specifically trained or specialized in these various areas and therefore does not have the expertise to give an opinion about them as it relates to overtime requirements, and (2) does not sufficiently identify the functional limitations related to the various conditions with regard to overtime requirements In order to further evaluate your request for an accommodation, you will be required to appear for independent medical examinations by doctors designated by the Company regarding whether you can perform the essential functions of your job with or without reasonable accommodation, and without representing a direct threat to the health or safety of yourself or others. The Company will cover the costs of this examination.

Accordingly, you will be required to appear for independent medical examination by Dr. James Hawkins on March 23, 2020 at 2:00 pm. The addresses are below. The Company will cover the costs of this examination.

> Dr. James R. Hawkins – Psychiatry & Neurology
> 2727 Madison Road Ste 303B
> Cincinnati, OH 45209
> Office is located on the 3rd floor above a store front building
> (513) 721-0990

Accordingly, you will be required to appear for independent medical examination by Dr. Paul T. Hogya, M.D., FACEP on March 26, 2020 at 10:00am. The addresses are below. The Company will cover the costs of this examination.

> Dr. Paul T. Hogya M.D., FACEP
> Workability Wellness Center
> 7665 Monarch Court #109
> West Chester, OH 45069
> (513) 494-0308

**EXHIBIT**

9

Per your request today, I have changed your appointments to the following times:

Accordingly, you will be required to appear for independent medical examination by Dr. James Hawkins on - April 16, 2020 at 10:30am. The addresses are below. The Company will cover the costs of this examination.

> Dr. James R. Hawkins – Psychiatry & Neurology
> Bushnell Building
> 14 E. Main St.
> Springfield, OH 45502
> Office is located on the 2nd floor
> (513) 721-0990

Accordingly, you will be required to appear for independent medical examination by Dr. Paul T. Hogya, M.D., FACEP on April 1, 2020 at 11:30 am. The addresses are below. The Company will cover the costs of this examination.

> Dr. Paul T. Hogya M.D., FACEP
> Qualified Disability
> Orchard Office Park
> 61 A North Dixie Drive
> Vandalia, OH 45377
> (513) 494-0308

If you do not appear for these appointments absent extenuating circumstances, the Company will determine that you have refused to participate in the interactive process and will evaluate your request accordingly.

Once we receive the report from the physician, we will further evaluate your request for accommodation, and will contact you to discuss further.

If you have any questions, please contact me at 937-496-3972.

Regards,

*Trisha A. Miller*

Trisha A. Miller
Team Member Care Ambassador
Dayton-Phoenix Group
250 Northwoods Blvd.
Vandalia, OH 45377
937-496-3972 office
Redacted cell

-----PAGE INTENTIONALLY LEFT BLANK-----